David Hecht (dhecht@piercebainbridge.com)
**PIERCE BAINBRIDGE BECK PRICE & HECHT LLP**
20 West 23rd St Fifth Floor
New York, New York 10010
Telephone: 212-484-9866

Attorneys for Plaintiff
Dareltech, LLC

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**

| | |
|---|---|
| **DARELTECH, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**SAMSUNG ELECTRONICS CO., LTD.**<br>**AND SAMSUNG ELECTRONICS**<br>**AMERICA, INC.,**<br><br>Defendants. | Civil Action No. 18-cv-00702<br><br>**JURY TRIAL DEMANDED**<br><br>*DOCUMENT ELECTRONICALLY FILED* |

**AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Dareltech, LLC ("Dareltech), by and through its attorneys, Pierce Bainbridge Beck Price & Hecht LLP, hereby demands and complaints of Samsung Electronics America, Inc. ("SEA") and Samsung Electronics Co., Ltd. ("SEC") (collectively referred to as "Samsung") as follows:

**NATURE OF THE ACTION**

1.     This is an action under the patent laws of the United States, 35 U.S.C. §§ 1, et seq., for infringement by Samsung of claims of U.S. Patent Nos. 8,593,427; 8,717,328; and 9,075, 612 (collectively referred to as the "Patents-in-Suit").

**PARTIES**

2. Dareltech, LLC ("Dareltech") is a limited liability company organized and existing under the laws of Delaware with a principal place of business at 6900 Wisconsin Avenue No. 30901, Bethesda MD 20824.

3. On information and belief, Samsung Electronics America, Inc. ("SEA") is a corporation organized and existing under the laws of the State of New York, having its principal place of business at 105 Challenger Road, Ridgefield Park, New Jersey 07660, and with a registered agent at 1999 Bryan Street, Suite 900, Dallas, Texas 75201. SEA is a wholly owned subsidiary of SEC.

4. On information and belief, effective January 1, 2015, SEA merged with Samsung Telecommunications America, LLC ("STA"), a Delaware limited liability company, previously with a principal place of business at 1301 E. Lookout Drive, Richardson, Texas 75082; a manufacturing and service facility at 1000 Klein Road, Plano, Texas 75074; and a registered agent at 211 E. 7th Street, Suite 620, Austin, Texas 78701. On information and belief, SEA is the surviving entity of the merger with STA and continues to operate STA's facilities in Texas.

5. On information and belief, Defendant Samsung Electronics Co. Ltd. ("SEC") is a corporation organized and existing under the laws of Korea, having its principal place of business at 129 Samsung-Ro, Yeongtong-Gu, Suwon, Gyeonggi-Do, Korea. SEC maintains its North America Headquarters at 85 Challenger Road, Ridgefield Park, New Jersey 07660 and its America Headquarters at 3655 North First Street, San Jose, CA 95134. SEC may be served pursuant to the provisions of the Hague Convention.

6. Samsung is a leading manufacturer and seller of smartphones in the United States.

**JURISDICTION AND VENUE**

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.     This Court has personal jurisdiction over Defendants SEA and SEC because, inter alia, upon information and belief, (i) Defendants SEA and SEC have done and continue to do business in Texas; (ii) Defendants SEA and SEC have committed and continue to commit acts of patent infringement in the State of Texas, including by making, using, offering to sell, and/or selling accused products in Texas, and/or importing accused products into Texas, including by Internet sales and sales via retail and wholesale stores, and/or inducing others to commit acts of patent infringement in this district; and (iii) Defendant SEA is registered to do business in Texas and maintains an office in Richardson, Texas and a manufacturing and maintenance facility for accused products in Plano, Texas. In addition, or in the alternative, this Court has personal jurisdiction over Defendant SEC pursuant to Fed. R. Civ. P. 4(k)(2).

9.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b) because, inter alia, upon information and belief, (i) Defendants SEA and SEC have done and continue to do business in this district; (ii) Defendants SEA and SEC have committed and continue to commit acts of patent infringement in this district, including making, using, offering to sell, and/or selling accused products in this district, and/or importing accused products into this district, including by internet sales and sales via retail and wholesale stores, and/or inducing others to commit acts of patent infringement in this district; (iii) Defendant SEA maintains a manufacturing and service facility for accused products in this district; (iv) Defendant SEC is a foreign entity; and (v) this judicial district is familiar with the technology of the Patents-in-Suit, having presided over several lawsuits involving patents from the same patent family.

## SINGLE ACTION

10.     This suit is commenced against Defendants SEA and SEC pursuant to 35 U.S.C. § 299 in a single action because, inter alia, upon information and belief, SEA and SEC are part of the same corporate structure and distribution chain for the making, importing, offering to sell, selling, and using of the accused devices in the United States. In addition, both Defendants share the same management, common ownership, advertising platforms, facilities, distribution chains and platforms, and accused product lines and products involving related technologies.

11.     Accordingly, the Defendants operate as a unitary business venture and are jointly and severally liable for patent infringement relating to the televisions and smartphones made, used, imported, offered for sale, sold, or used in the United States by either or both of them. Dareltech's right to relief against each of these Defendants arises out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing, offering for sale, and sale of the same accused television and smartphone devices in the United States. Additionally, questions of fact common to both of these Defendants will arise in this action, including whether the accused smartphone devices infringe the asserted patents. Therefore, joinder of the Defendants is proper under 35 U.S.C. § 299. See NFC Tech., LLC v. HTC Am., Case No. 2:13-cv-1058-JRG, 2014 U.S. Dist. LEXIS 105230, *7-8 (E.D. Tex. Aug. 1, 2014) (finding joinder to be proper where defendants manufactured different handsets making use of a common component alleged to infringe plaintiff's patents).

## PATENTS-IN-SUIT

12.     On November 26, 2013, the United States Patent and Trademark Office duly and lawfully issued U.S. Patent No. 8,593,427 (the "'427 Patent"), entitled "System and method for managing display power consumption," based upon an application filed by inventors Jinrong Yang and Ramzi Khalil Maalouf. A true and correct copy of the '427 Patent is attached hereto as Exhibit A.

13.     On May 6, 2014, the United States Patent and Trademark Office duly and lawfully issued U.S. Patent No. 8,717,328 (the "'328 Patent"), entitled "System and method for managing display power consumption," based upon an application filed by inventors Jinrong Yang and Ramzi Khalil Maalouf. A true and correct copy of the '328 Patent is attached hereto as Exhibit B.

14.     On July 7, 2015, the United States Patent and Trademark Office duly and lawfully issued U.S. Patent No. 9,075,612 (the "'612 Patent"), entitled "System and method for managing display power consumption," based upon an application filed by inventors Jinrong Yang and Ramzi Khalil Maalouf. A true and correct copy of the '612 Patent is attached hereto as Exhibit C.

15.     The Patents-in-Suit relate generally to systems and methods for managing the power consumption of display systems in cell phones and other handheld computing devices for extending the usable battery life, that is, time between required recharge of the devices.

## FACTUAL ALLEGATIONS

16.     Dareltech is the owner of all right, title, and interest in and to the Patents-in-Suit and possesses all rights of recovery, including the right to recover for past damages.   Dareltech was recently formed by the inventors of the Patents-in-Suit, Jinrong Yang and Ramzi Khalil Maalouf (collectively, the "Inventors"), who have assigned all of their respective rights in connection with the Patents-in-Suit to the new company.

17.     The Inventors began to commercialize the technology of the Patents-in-Suit by developing a functional prototype of one embodiment of the technology of the Patents-in-Suit. The prototype demonstrated a user interface application for Android devices using OLED technology that seamlessly solved the problem of rapid draining of battery charge suffered by every smart phone/tablet user. The effect was achieved without any interference with normal app

or operating system functionality or any changes in the terminal display's aspect ratio, *i.e.*, with no changes to the user's normal experience.

18.     In addition to the technology of the Patents-in-Suit, Jinrong Yang and Ramzi Khalil Maalouf invented, patented, designed and manufactured highly successful and globally recognized products such as a "Handle for a Handheld Terminal" (2012) commonly known as the "selfie stick", and are currently in the design-development phase of a truly bezel-less smartphone, with the world's highest body to screen ratio.

19.     The Inventors, through their company Dareltech, seek to enforce their own patents. Neither Dareltech nor the Inventors have ever sought to litigate or otherwise enforce a patent purchased from an outside third party. The patented inventions that Dareltech seeks to enforce in this case are the fruits of Dareltech's inventors, Jinrong Yang and Ramzi Khalil Maalouf.

### Defendants and the Accused Products

20.     As referred to in this Complaint, and consistent with 35 U.S.C. § 100(c), the "United States" means "the United States of America, its territories and possessions."

21.     Upon information and belief, including based on evaluation of Samsung's products, Samsung makes, uses, offers to sell, and/or sells in the United States, and/or imports into the United States products made in accordance with the Patents-in-Suit, including, but not limited to, smartphones and tablets.

22.     Upon information and belief, Samsung actively and knowingly directs, causes, induces and encourages others, including, but not limited to, its designers, manufacturers, suppliers, distributors, resellers, software developers, customers, end users, and repair providers, to make, use, sell, and/or offer to sell in the United States, and/or import into the United States, products made in accordance with the Patents-in-Suit, including, but not limited to, smartphone

and tablets, by, among other things, providing instructions, manuals, and technical assistance relating to the installation, set up, use, operation, and maintenance of said smartphones and tablets in Ultra Power Saving Mode ("UPSM").

23.     A representative, but not exclusive, list of smartphones and tablets made in accordance with the Patents-in-Suit is attached as Exhibit D hereto.

### Meeting with Samsung and Notice of the Patents-in-Suit

24.     In December 2013, the Inventors, together with a supporting team of engineers and consultants from China and the United States, flew to Seoul, Korea, for meetings with Samsung and other companies to discuss possible licenses of the technology.  In a series of meetings in Seoul, on December 6, December 18 and December 30, 2013, and on January 15, 2014, Inventors' representatives met with various senior Samsung executives including the head of Research & Development (Byung-Hyun Kim), and other senior managers.

25.     In these meetings, senior Samsung executives were shown the technologies disclosed in the Patents-in-Suit.  Inventors' representatives shared with them various descriptive materials and embodiments of the technology, including presentations, animations, and a functional prototype demonstrating an embodiment of the UPSM technology. The Samsung executives expressed a keen interest in the technology and a desire to license the technology.

26.     On January 25, 2014 Inventors' representatives received a written invitation from Samsung for Inventors and their team to meet at the Samsung Suwon complex facility on February 20, 2014, to discuss a licensing agreement for the technology of the Patents-in-Suit. However, Samsung ultimately canceled the meeting. And just a few days after the meeting had been scheduled to occur, on February 24-27, 2014, Samsung launched its Galaxy S5 phone, which prominently included the UPSM feature, at the 2014 GSMA Mobile World Congress in Barcelona.

27.    By means of its meetings with the Inventors' representatives, Samsung was put on notice regarding the Patents-in-Suit.

## COUNT I: INFRINGEMENT OF THE '427 PATENT

28.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

29.    Upon information and belief, Samsung has infringed at least claims 1, 3, and 13 of the '427 Patent pursuant to 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States smartphones and tablets, including but not limited to the smartphones and tablets identified in Exhibit D hereto. Upon information and belief, Samsung's infringement pursuant to 35 U.S.C. § 271(a) is ongoing.

30.    For example, the Samsung Galaxy S6 Edge (the "S6 Edge"), one of the products identified in Exhibit D, includes an Ultra Power Saving Mode (the "UPSM"). When the UPSM is activated, the display of the S6 Edge: 1) switches from color to greyscale, 2) changes the background to black, and 3) displays a plurality of application icons. The plurality of application icons (i.e., first information) are displayed in a first portion of the display (identified by the red box) in the below screenshot. The plurality of icons represent available applications that can be run in the UPSM. (e.g., phone, messages, and internet).



Thus, the S6 Edge displays first information in an available display area comprising a first portion of the display screen in a configuration having a plurality of portions as required by claim 1.

31.    In the UPSM, the first portion of the display (identified by the red box in the below screenshot) is powered-on to display the plurality of icons. A user can launch an application by pressing one of the application icons on the display. Thus, the display of the S6 Edge includes a first portion of the display screen and associated sensors, which is configured in a powered-on state to perform display functions and receive user input as required by claim 1.



32.    Unlike LCD displays, AMOLED displays (such as included in the S6 Edge) do not require a backlight. Thus, a black pixel in an AMOLED display is a powered-off pixel. In the UPSM, the black portion of the display (i.e., the second portion) (identified with a red box in the screenshot below) is in a powered-off state. Further, the second portion of the display is incapable of being selected by the user.  Thus, the display of the S6 Edge includes a second portion of the display screen and associated sensors, which is configured in a powered-off state and incapable of receiving user input as required by claim 1.



33.     When one of the pluralities of icons is selected by a user in the UPSM, the S6 Edge is programmed to display an application screen that covers most of the display area (including both the first and second portions). The S6 Edge changes the second portion of the display to the powered-on state to display the application screen. By displaying the application screen in both the first and second portions, the S6 Edge adds the second portion to the available display area. For example, when a user presses the phone application icon (identified with a red box) in the left screenshot below, the S6 Edge displays the phone application screen on most of the display, as illustrated in the right screenshot below.



Thus, responsive to a user indication in the first portion, the S6 Edge is programmed to add the second portion to the available display area by transitioning the second portion to the powered-on state to perform display functions and receive user input as required by claim 1.

34.     In the UPSM, the S6 Edge is programmed to display an application screen in both the first and second portions of the display. The second information is a portion of the application screen that is displayed in the second portion. For example, in the left screenshot below of the phone application screen, the dialing pad (identified with a red box) is the second information that is displayed in the second portion. For reference, the right screenshot illustrates the second portion (identified with a red box) when the second portion is powered-off.



Thus, the S6 Edge displays second information in the second portion as required by claim 1.

35.     In the UPSM, the S6 Edge is programmed to display application screens that are larger than the application icons. For example, the size of the dialing pad in the phone application screen in the right screenshot below (identified with a red box) is larger than the size of the phone application icon in the left screenshot below (identified with a red box).



Thus, the S6 Edge generates the second information by mathematically upscaling the first information as required by claim 1.

36.     The S6 Edge upscales the size of the dialing pad (i.e., the second information) in the phone application such that it is displayed in both the first and second portions. Thus, the second information displayed by the S6 Edge comprises a portion of the first information upscaled for display in both the second portion and the first portion as required by claim 1.

37.     In the UPSM, the S6 Edge is programmed to display an application screen in both the first and second portions of the display. The third information is a portion of the application screen that is displayed in the first portion. For example, in the left screenshot below of the phone application screen, the phone contact display area (identified with a red box) is the third information that is displayed in the first portion. For reference, the right screenshot illustrates the first portion (identified with a red box) when the plurality of application icons are displayed.



Thus, the S6 Edge displays third information in the first portion as required by claim 1.

38.     The S6 Edge upscales the size of the phone contact display area (i.e., the first information) in the phone application such that it is displayed in both the first and second portions. Thus, the third information displayed by the S6 Edge comprises a portion of the first information upscaled for display in both the second portion and the first portion as required by claim 1.

39.     Upon information and belief, Samsung has induced infringement of one or more claims of the '427 Patent pursuant to 35 U.S.C. § 271(b), by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, its distributors, designers, suppliers, resellers, software developers, customers, end users, and repair providers, to make, use, sell, and/or offer to sell in the United States, and/or import into the United States, smartphones and tablets made in accordance with the '427 Patent, including, but not limited to, the smartphones and tablets identified in Exhibit D hereto, by, among other things, providing instructions, manuals, and technical assistance relating to the installation, set up, use, operation, and maintenance of said smartphones and tablets in UPSM. Upon information and belief, Samsung's inducement of infringement pursuant to 35 U.S.C. § 271(b) is ongoing.

40.     Upon information and belief, Samsung has committed the foregoing infringing activities without license from Dareltech and with notice of the '427 Patent.

41.     Samsung knew the '427 Patent existed while committing the foregoing infringing acts, thereby willfully, wantonly and deliberately infringing the '427 Patent. Dareltech's damages should be trebled pursuant to 35 U.S.C. § 284 because of Samsung's willful infringement of the '427 Patent.

42.     The acts of infringement by Samsung have been with the knowledge of the '427 Patent and are willful, wanton and deliberate, thus rendering this action "exceptional" within the meaning of 35 U.S.C. § 285 and entitling Dareltech to its reasonable attorney's fees and litigation expenses.

43.     The acts of infringement by Samsung will continue unless enjoined by this Court.

44.     Dareltech has been and will continue to be irreparably harmed and damaged by Samsung's acts of infringement of the '427 Patent and has no adequate remedy at law.

## COUNT II: INFRINGEMENT OF THE '328 PATENT

45.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

46.     Upon information and belief, Samsung has infringed at least claims 1, 8, and 15 of the '328 Patent pursuant to 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States smartphones and tablets, including but not limited to the smartphones and tablets identified in Exhibit D hereto. Upon information and belief, Samsung's infringement pursuant to 35 U.S.C. § 271(a) is ongoing.

47.     For example, the Samsung Galaxy S6 Edge (the "S6 Edge"), one of the products identified in Exhibit D, is a portable phone that includes a high-definition super active-matrix organic light-emitting diode (AMOLED) display screen (the "display"). The display includes capacitive touch sensors. The S6 Edge includes an Ultra Power Saving Mode (the "UPSM").

When the UPSM is activated, the display of the S6 Edge: 1) switches from color to greyscale, 2) changes the background to black, and 3) displays a plurality of application icons. The plurality of application icons (i.e., first information) are displayed in a first portion of the display (identified by a red box) in the screenshot below. The plurality of icons represent applications that can be executed when the S6 Edge is operating in the UPSM (e.g., phone, messages, and internet).



Thus, the S6 Edge displays first information in an available display area comprising a first portion of the display screen in a configuration having a plurality of portions as required by claim 1.

48.    In the UPSM, the first portion of the display (identified by the red box in the below screenshot) is powered-on to display the plurality of icons. A user can launch an application by pressing one of the application icons on the display. Thus, the display of the S6 Edge includes a first portion of the display screen and associated sensors, which is configured in a powered-on state to perform display functions and receive user input as required by claim 1.



49.     Unlike LCD displays, AMOLED displays (such as included in the S6 Edge) do
not require a backlight. Thus, a black pixel in an AMOLED display is a powered-off pixel. In the
UPSM, the black portion of the display (i.e., the second portion) (identified with a red box in the
screenshot below) is in a powered-off state. Further, the second portion of the display is
incapable of being selected by the user.  Thus, the display of the S6 Edge includes a second
portion of the display screen and associated sensors, which is configured in a powered-off state
and incapable of receiving user input as required by claim 1.



50.      When one of the pluralities of icons is selected by a user in the UPSM, the S6 Edge is programmed to display an application screen that covers most of the display area (including both the first and second portions). The S6 Edge changes the second portion of the display to the powered-on state to display the application screen. By displaying the application screen in both the first and second portions, the S6 Edge adds the second portion to the available display area. For example, when a user presses the phone application icon (identified with a red box) in the left screenshot below, the S6 Edge displays the phone application screen on most of the display, as illustrated in the right screenshot below.



Thus, responsive to a user indication in the first portion, the S6 Edge adds the second portion to the available display area by transitioning the second portion to the powered-on state to perform display functions and receive user input as required by claim 1.

51.      In the UPSM, the S6 Edge is programmed to display an application screen in both the first and second portions of the display. The second information is a portion of the application screen that is displayed in the second portion. For example, in the left screenshot below of the phone application screen, the dialing pad (identified with a red box) is the second

information that is displayed in the second portion. For reference, the right screenshot illustrates the second portion (identified with a red box) when the second portion is powered-off.



Thus, the S6 Edge displays second information in the second portion as required by claim 1.

52.     In the UPSM, the S6 Edge can execute several applications (e.g., phone, messages, and internet). Each of these applications includes a graphical content data structure. For example, the phone application includes, among other content, a phone application icon (identified by a red box) in the left screenshot below and a dialing pad (identified by a red box) in the right screenshot below.



Thus, the S6 Edge receives a graphical content data structure comprising content for display in the available display area as required by claim 1.

53. As illustrated in the left screenshot below, the S6 Edge displays the phone application icon (identified by a red box) in the available display area when the second portion is in the powered-off state. Further, as illustrated in the right screenshot below, the S6 Edge displays the dialing pad (identified by a red box) in the available display area when the second portion is in the powered-on state.



Thus, the S6 Edge selects elements of the graphical content data structure for display in the available display area based at least in part on whether the second portion is in a powered-on state as required by claim 1.

54. In the UPSM, the S6 Edge generates a sleep signal after a set period of inactivity. The entire display (including the second portion) of the S6 Edge is powered-off when the sleep signal is generated. For example, the left screenshot below illustrates the display of the S6 Edge before the sleep signal is generated, and the right screenshot below illustrates the display after the sleep signal is generated.



Thus, responsive to a system event, the S6 Edge removes the second portion from the available display area and returns the second portion to the powered-off state. The system event is one of a set comprising a power down or sleep signal.

55. Upon information and belief, Samsung has induced infringement of one or more claims of the '328 Patent pursuant to 35 U.S.C. § 271(b), by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, its distributors, designers, suppliers, resellers, software developers, customers, end users, and repair providers, to make, use, sell, and/or offer to sell in the United States, and/or import into the United States, smartphones and tablets made in accordance with the '328 Patent, including, but not limited to, the smartphones and tablets identified in Exhibit D hereto, by, among other things, providing instructions, manuals, and technical assistance relating to the installation, set up, use, operation, and maintenance of said smartphones and tablets in UPSM. Upon information and belief, Samsung's inducement of infringement pursuant to 35 U.S.C. § 271(b) is ongoing.

56. Upon information and belief, Samsung has committed the foregoing infringing activities without license from Dareltech and with notice of the '328 Patent and/or members of its patent family.

57.     Samsung knew the '328 Patent and/or members of its patent family existed while committing the foregoing infringing acts, thereby willfully, wantonly and deliberately infringing the '328 Patent. Dareltech's damages should be trebled pursuant to 35 U.S.C. § 284 because of Samsung's willful infringement of the '328 Patent.

58.     The acts of infringement by Samsung have been with the knowledge of the '328 Patent and are willful, wanton and deliberate, thus rendering this action "exceptional" within the meaning of 35 U.S.C. § 285 and entitling Dareltech to its reasonable attorney's fees and litigation expenses.

59.     The acts of infringement by Samsung will continue unless enjoined by this Court.

60.     Dareltech has been and will continue to be irreparably harmed and damaged by Samsung's acts of infringement of the '328 Patent and has no adequate remedy at law.

## COUNT III: INFRINGEMENT OF THE '612 PATENT

61.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

62.     Upon information and belief, Samsung has infringed at least claims, 1, 10, and 14 of the '612 Patent pursuant to 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States smartphones and tablets, including but not limited to the smartphones and tablets identified in Exhibit D hereto. Upon information and belief, Samsung's infringement pursuant to 35 U.S.C. § 271(a) is ongoing.

63.     For example, the Samsung Galaxy S6 Edge (the "S6 Edge"), one of the products identified in Exhibit D, is a portable phone as required by the claims.

64.     The S6 Edge includes a high-definition super active-matrix organic light-emitting diode (AMOLED) display screen (the "display").

65.     The S6 Edge includes a processor.

66.     The S6 Edge includes memory which, on information and belief, comprises program instructions which are executed by the processor to implement.

67.     The S6 Edge includes an Ultra Power Saving Mode (the "UPSM"). When the UPSM is activated, the S6 Edge lowers the power consumption of the display by switching the display from color to greyscale and changing the background to black.  Thus, the S6 Edge includes a power management module configured to manage power consumption of the display as required by claim 1.

68.     When the display is not in a sleep mode, the S6 Edge displays graphical indications in color in a full configuration mode. For example, the S6 Edge displays the time and date (identified by a red box) in the screenshot below.



Thus, when the display is not in a sleep mode, the S6 Edge directs a display controller to display a set of a plurality of graphical indications in color in a full configuration mode that puts substantially all of the display screen in a powered-on state as required by claim 1.

69.     When the display is in the sleep mode, the S6 Edge displays a black and white unlock image. The unlock image includes graphical indications. For example, the S6 Edge displays the time and date (identified by a red box) in the screenshot below.



Thus, when the display is in a sleep mode, the S6 Edge directs the display controller to display a subset of the plurality of graphical indications. The subset comprises an unlock image that includes at least one of time, date, or an indication of an email, text message, or voice message. The graphical indications are displayed in a portion of the display screen and are displayed in black, white or grayscale, instead of displayed in color.

70.     The display in the S6 Edge includes capacitive touch sensors. The S6 Edge responds to unlock gestures associated with the unlock image when the phone is in a locked state as required by claim 1.

71.     In response to a particular unlock gesture, the S6 Edge unlocks the phone and enters the full configuration mode. For example, in response to a user swiping the screen in an upward direction (identified by a red arrow) in the left screenshot below and entering an unlock pattern (identified by a red arrow) in the right screenshot below,



the S6 Edge unlocks the phone and enters the full configuration mode (illustrated in the screenshot below).



Thus, a particular unlock gesture causes the S6 Edge to transition to an unlocked state and the display controller to enter the full configuration mode as required by claim 1.

72.    In response to another particular unlock gesture, the S6 Edge unlocks the phone and enters the UPSM. For example, in response to a user swiping the screen in a downward direction (identified by a red arrow) in the left screenshot below, selecting an UPSM icon (identified by a red box) in the right screenshot below,



and entering an unlock pattern (identified by a red arrow) in the screenshot below, the S6 Edge unlocks the phone and enters the UPSM mode.



Thus, another particular unlock gesture causes the S6 Edge to transition to an unlocked state and the display controller to enter a proportional configuration mode as required by claim 1.

73.     Unlike LCD displays, AMOLED displays (such as included in the S6 Edge) do not require a backlight. Thus, a black pixel in an AMOLED display is a powered-off pixel. In the UPSM, a portion of the display (e.g., the portion identified by a red box in the screenshot below) is in a powered-off state. Also, in the UPSM, another portion of the display (e.g., the portion identified by a green box in the screenshot below) is in a powered-on state.



Thus, the S6 Edge includes a proportional configuration mode that puts at least a portion of the display screen in a powered-off state and another portion of the display screen in a powered-on state as required by claim 1.

74. Upon information and belief, Samsung has induced infringement of one or more claims of the '612 Patent pursuant to 35 U.S.C. § 271(b), by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, its distributors, designers, suppliers, resellers, software developers, customers, end users, and repair providers, to make, use, sell, and/or offer to sell in the United States, and/or import into the United States, smartphones and tablets made in accordance with the '612 Patent, including, but not limited to, the smartphones and tablets identified in Exhibit D hereto, by, among other things, providing instructions, manuals, and technical assistance relating to the installation, set up, use, operation, and maintenance of said smartphones and tablets in UPSM. Upon information and belief, Samsung's inducement of infringement pursuant to 35 U.S.C. § 271(b) is ongoing.

75. Upon information and belief, Samsung has committed the foregoing infringing activities without license from Dareltech and with notice of the '612 Patent and/or members of its patent family.

76.     Samsung knew the '612 Patent and/or members of its patent family existed while committing the foregoing infringing acts, thereby willfully, wantonly and deliberately infringing the '612 Patent. Dareltech's damages should be trebled pursuant to 35 U.S.C. § 284 because of Samsung's willful infringement of the '612 Patent.

77.     The acts of infringement by Samsung have been with the knowledge of the '612 Patent and are willful, wanton and deliberate, thus rendering this action "exceptional" within the meaning of 35 U.S.C. § 285 and entitling Dareltech to its reasonable attorney's fees and litigation expenses.

78.     The acts of infringement by Samsung will continue unless enjoined by this Court.

79.     Dareltech has been and will continue to be irreparably harmed and damaged by Samsung's acts of infringement of the '612 Patent and has no adequate remedy at law.

**PRAYER FOR RELIEF**

80.     WHEREFORE, Dareltech prays for judgment in its favor against Samsung granting Dareltech the following relief:

A. Entry of judgment in favor of Dareltech and against Samsung on all counts;

B. Entry of judgment that Samsung has infringed the Patents-in-Suit;

C. Entry of judgment that Samsung's infringement of the Patents-in-Suit has been willful;

D. An order permanently enjoining Samsung together with its officers, directors, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them from infringing the Patents-in-Suit;

E. An award of compensatory damages adequate to compensate Dareltech for Samsung's infringement of the Patents-in-Suit, in no event less than a reasonable royalty trebled as provided by 35 U.S.C. § 284;

F. Dareltech's reasonable fees for expert witnesses and attorneys, as provided by 35

U.S.C. § 285;

G. Dareltech's costs;

H. Pre-judgment and post-judgment interest on Dareltech's award; and

I. All such other and further relief as the Court deems just or equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Fed. R. Civ. P., Dareltech hereby demands trial by jury in this action of all claims so triable.

PIERCE BAINBRIDGE BECK PRICE & HECHT LLP
Attorneys for Plaintiff
Dareltech, LLC

/s/ David L. Hecht
David L. Hecht (dhecht@piercebainbridge.com)
20 West 23rd St Fifth Floor
New York, New York 10010
Telephone: 212-484-9866