# EXHIBIT J

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| DARELTECH, LLC,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>SAMSUNG ELECTRONICS CO. LTD. AND SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>　　　Defendants.<br><br>SAMSUNG ELECTRONICS CO. LTD. AND SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>　　　Counterclaim-Plaintiffs,<br><br>　　　v.<br><br>DARELTECH, LLC,<br><br>　　　Counterclaim-Defendant. | Civil Action No.: 4:19-CV-00702 |

**PLAINTIFF/COUNTERCLAIM DEFENDANT'S SUPPLEMENTAL FED. R. CIV. PRO. 26(a)(2)(C) STATEMENT REGARDING SUBJECT MATTER AND SUMMARY OF FACTS AND OPINIONS FOR THE EXPERT TESTIMONY OF JUSTIN GRANT**

Dareltech, LLC ("Dareltech"), pursuant to Fed. R. Civ. Pro. 26(a)(2)(C) and by agreement of the parties serves the following Supplemental Statement Regarding Subject Matter and Summary of Facts and Opinions to Defendants/Counterclaim Plaintiffs Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Defendants" or "Samsung").

## SUBJECT MATTER OF EXPERT TESTIMONY

**BACKGROUND:**

Justin Grant is an experienced app developer with practical expertise in full stack development. Mr. Grant oversees a team of engineers who actively develop web and mobile applications in a variety of different technology stacks and coding architectures. He has deep experience with mobile app development, including on Android, and optimization of user interfaces. Samsung admits in its petitions for IPR that the level of ordinary skill in the art is a person with a 4-year degree in electrical engineering, computer engineering, or computer science, and one year of experience in user interface software or system design, but *similar knowledge and experience could be obtained by other means*. Mr. Grant brings years of practical experience in software development, and he regularly interacts with and directs others who are skilled in the art. Thus, Mr. Grant may provide evidence regarding his professional background, which is reflected in his curriculum vitae/resume. Mr. Grant may provide evidence regarding his web and mobile application development work, including work on UI/GUI systems.

Mr. Grant may provide evidence regarding the view of a person of ordinary skill in the art ("POSITA") at the time of the claimed invention regarding the disputed terms based on the requirements of the law as it pertains to claim construction. In particular, Mr. Grant may provide evidence regarding what the disputed terms in the claims would mean to a POSITA at the time of the claim invention, in the context of the intrinsic evidence (*e.g.* claim(s) in which they appear, the specification of the patent, and its prosecution history and references cited by the examiner) as well as any relevant extrinsic evidence, including the evidence identified by Dareltech and Samsung.

**LEVEL OF SKILL OF A PERSON OF ORDINARY SKILL IN THE ART**

Mr. Grant may provide evidence regarding the qualifications of a POSITA at the time of the claimed inventions. In particular, Mr. Grant may provide evidence regarding his understanding that, for each of the Asserted Patents, a POSITA would have a degree in electrical engineering, computer engineering, or computer science, and one year of experience in user interface software or system design, or *similar knowledge and experience could be obtained by other means*, which Mr. Grants understands to be at least 4 years of experience as an app developer.

**TECHNOLOGY OVERVIEW:**

Mr. Grant may provide an overview of technologies relevant to the Asserted Patents. In particular, Mr. Grant may provide evidence regarding the use of display technologies, types of display technologies used in mobile devices, and the history and evolution of mobile device display technologies up to and including at the time of the claimed inventions. Similarly, Mr. Grant may provide evidence regarding touch screen technologies, types of touch screen technologies used in mobile devices, and the history and evolution of touch screen technologies up to and including at the time of the claimed inventions. Mr. Grant may provide evidence regarding known techniques for optimizing power consumption (i.e. preservation of battery) in mobile devices.

Mr. Grant may also provide evidence regarding user interface technology. Mr. Grant may provide evidence regarding hardware and software upon which such user interface technology was built, both prior to and at the time of the claimed inventions. Mr. Grant may provide

evidence regarding ways for users to interact with mobile devices that were known at the time of the claimed inventions, and may provide evidence regarding the effects of such user interactions.

**CLAIM TERMS:**

Mr. Grant may provide evidence regarding his opinion of how a POSITA would understand the disputed terms of the claims in the Asserted Patents, in view of the intrinsic and extrinsic evidence. Mr. Grant may provide evidence regarding his opinions as to the proper constructions of terms, phrases, and clauses that appear in the claims of the Asserted Patents, including but not limited to the terms, phrases and clauses specifically identified below. Mr. Grant may also provide evidence in response or in rebuttal to any arguments or expert testimony offered by Samsung:

- "mathematically upscaling"
- "a second portion of the display screen and associated sensors, which is configured in a powered-off state and incapable of receiving user input"
- "incapable of receiving user input"
- "graphical content data structure"
- "unlock image"
- "power management module"

In offering his opinions, Mr. Grant may reference information from various sources including his professional experience in app development and design. Mr. Grant may reference the Asserted Patents and their file histories. Mr. Grant may reference prior art, including prior art described in the Asserted Patents themselves, and prior art considered by the Patent Office during prosecution of the Asserted Patents. Mr. Grant may reference the Parties' Joint Claim Construction and Prehearing Statement and the intrinsic and extrinsic evidence identified therein. Mr. Grant may reference the general knowledge of a POSITA at the time of the claimed

inventions. Mr. Grant may reference claim construction briefs and any accompanying declarations filed by the Parties in this case.

**SUMMARY OF FACTS AND OPINIONS:**

With regard to "mathematically upscaling," the specification does not define "upscaling" and an ordinary interpretation of "upscaling" is incompatible with replacing one display element with another. As such, Mr. Grant may provide evidence regarding his opinion that a POSITA would understand that the applicants of the '427 and '328 patents acted as their own lexicographer with respect to the term "mathematical upscaling," and related terms. As such, Mr. Grant may provide evidence regarding how a POSITA would look to the specification of the patents to guide interpretation of these terms. For example, "[t]he second information includes a portion of the first information upscaled for display in both the second portion and the first portion." '427 Pat. at 5:10-13; see also id. at Fig. 27, 22:65-67, 24:13-15. The specification does not indicate that upscaling has anything to do with upscaling images in the tradition sense; rather, a person of ordinary skill in the art would understand that what is being upscaled is information (e.g. data that is stored in a structure). Mr. Grant may also opine regarding Samsung's proposed construction of the terms, which Samsung contends involve "mak[ing] a displayed image larger," and that Samsung's proposed construction is not supported by any evidence that would be considered by a POSITA in light of the context of the usage of the claim terms in the patents.

Mr. Grant may provide evidence that, in understanding the phrase "a second portion of the display screen and associated sensors, which is configured in a powered-off state and incapable of receiving user input," a POSITA would understand, based on the intrinsic and

extrinsic evidence, the "display screen" referenced in the '427 and '328 patent refers to the display itself: for example, an organic light emitting diode ("OLED") display, which can turn off individual pixels. Mr. Grant may also provide evidence that a POSITA would understand that the display screen does not refer to the associated sensors (e.g. capacitive sensors of modern smartphones and tablets that are typically invisible to users).

Mr. Grant may provide evidence regarding technical aspects of display screens, touch screens and how they are used in mobile devices. Specifically, Mr. Grant may provide evidence that well-established principles in the field of human-computer interaction hold that, in any valid interaction, a device must provide user-perceivable feedback in response to user input. See, e.g., Dillon, A. (2003) User Interface Design. MacMillan Encyclopedia of Cognitive Science, Vol. 4, London: MacMillan, 453-458 (e.g., "For example, any current interface provides a response to user input which signals to the user that their input has caused an action." "For interaction to proceed the human user must input a signal to the computer and perceive changes in the interface."). Mr. Grant may also provide evidence regarding the concepts of feedback and visibility are fundamental to modern interface design and specifically with respect to mobile devices. Mr. Grant may also provide evidence that the '427 and '328 patents do not describe any mechanism by which portions of the "associated sensors" are powered off, suggesting that a POSITA would understand they are not powered off in connection with portions of the display being powered off to conserve power.

Mr. Grant may provide evidence regarding his opinion that a POSITA would understand the display screen and associated sensors to be separate based on the intrinsic evidence; for example, the specification consistently couples the concepts of user input and response in the first ("active") portion of the screen. Mr. Grant may provide further evidence

6

regarding his opinion that a POSITA would understand the addition of the language "incapable of receiving user input" to simply be a direct reflection of the opposite state of the second portion of the screen, which does not respond to a user's touch.

Mr. Grant may provide evidence regarding his opinion that a POSITA would understand that a POSITA would understand that a "graphical content data structure" is a means for storing electronic data, a type of data structure. Mr. Grant may provide evidence that various visual elements of a software application that can be displayed on a display screen are stored in the structure. Mr. Grant may provide intrinsic evidence which indicates that the structure may be stored within graphics module 132, and dictionary definitions of data structure and graphics data structure.

Regarding the "unlock image" of the '612 patent, Mr. Grant may provide evidence regarding his opinion that Plaintiff's construction, which indicates that the image is a "graphical, interactive user-interface screen" is consistent with the prosecution history of the patent and would be understood be a POSITA. Mr. Grant may also provide evidence that the user-interface screen for the unlock image referenced in the patents may have two parts; for example, different entry sequences may be required to enter different modes.

Finally, Mr. Grant may provide evidence that the '612 patent's "power management module" would be understood by a POSITA to be a computer-readable storage medium that executes a particular algorithm described in the specification of the patent which causes portions of a display to be powered on or off; the patent specification also specifically indicates that the module may be a hardware component (*e.g.* screen power management module 158).

Dated: October 12, 2019  /s/ David L. Hecht
David L. Hecht
Pierce Bainbridge Beck Price & Hecht LLP
277 Park Ave. 45th Floor
New York, NY 10172
(212) 484-9866
dhecht@piercebainbridge.com

*Attorneys for Plaintiff and Counter-Defendant Dareltech, LLC.*

8

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 12, 2019, a true and correct copy of the foregoing document has been forwarded by electronic mail to all counsel of record for the Defendant.

By: /s/ Selina Kyle
Selina Kyle
