# EXHIBIT M

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**

| | |
|---|---|
| DARELTECH, LLC, <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., *et al.*, <br><br> Defendants. | No. 4:18-CV-00702-ALM <br><br> **JURY TRIAL DEMANDED** |

### DEFENDANTS' SUPPLEMENTAL P.R. 4-3(b) DISCLOSURE

### OF DR. TAJANA ROSING

**I.     Subject Matter on which Dr. Rosing is Expected to Present Evidence**

    **A.     General Information**

Dr. Rosing may provide evidence regarding her educational and professional background, which is reflected in her curriculum vitae. Dr. Rosing may provide evidence regarding her publications, patents, speaking engagements, honors, and awards, which are also reflected in her curriculum vitae. Dr. Rosing may provide evidence regarding her experience in the fields of energy-efficient system design and utilization, displays, UI/GUI systems, and power consumption management.

Dr. Rosing may provide evidence regarding the view of a person of ordinary skill in the art ("POSITA") at the time of the claimed invention of the disputed terms based on the requirements of the law as it pertains claim construction. In particular, Dr. Rosing may provide evidence regarding what a term in the claims would mean to a POSITA at the time of the claimed inventions, in the context of the intrinsic evidence (e.g., claim in which they occur, the specification of the patent, and its prosecution history) as well as any relevant extrinsic evidence.

### B. Level of Skill of A Person of Ordinary Skill in the Art

Dr. Rosing may provide evidence regarding the qualifications of a POSITA at the time of the claimed inventions. In particular, Dr. Rosing may provide evidence regarding her understanding that, for each of the Asserted Patents, a POSITA would have had at least the equivalent of a four-year degree in electrical engineering, computer engineering, or computer science, and one year of experience in user interface software or system design, at the time of the claimed inventions.

### C. Technology Overview

Dr. Rosing may provide an overview of technologies relevant to the Asserted Patents. In particular, Dr. Rosing may provide evidence regarding display technologies, types of display technologies used in electronic devices, and the history and evolution of display technologies up to and including at the time of the claimed inventions. Similarly, Dr. Rosing may provide evidence regarding touch screen technologies, types of touch screen technologies used in electronic devices, and the history and evolution of touch screen technologies up to and including at the time of the claimed inventions. Dr. Rosing may provide evidence regarding known techniques for managing power consumption in electronic devices, including mobile devices, devices having displays, and devices having touch screens.

Dr. Rosing may provide evidence regarding power consumption management in electronic devices, including mobile devices, devices having displays, and devices having touch screens. Dr. Rosing may provide evidence regarding the development, implementation, and effectiveness of various power consumption management techniques. Dr. Rosing may provide evidence regarding techniques for managing power consumption in mobile devices that were known at the time of the claimed inventions.

Dr. Rosing may provide evidence regarding user interface technology. Dr. Rosing may provide evidence regarding hardware and software upon which such user interface technology was built, both prior to and at the time of the claimed inventions. Dr. Rosing may provide evidence regarding ways for users to interact with mobile devices that were known at the time of the claimed inventions, and may provide evidence regarding the effects of such user interactions.

### D. The Asserted Patents

Dr. Rosing may provide an overview of the subject matter discussed in each of U.S. Patent Nos. 8,593,427 ("the '427 Patent"); 8,717,328 ("the '328 Patent"); and 9,075,612 ("the '612 Patent") (collectively "the Asserted Patents").

### E. Legal Standard for Claim Construction

Dr. Rosing may discuss legal principles provided to her by counsel that she applied in her analysis, including the following.

#### 1. Plain and Ordinary Meaning

- The words of a claim are generally given their ordinary and customary meaning.
- The ordinary and customary meaning of a claim term is the meaning that the term would have to a POSITA at the time of the invention, *i.e.*, as of the effective filing date of the patent application.
- "Customary meaning" refers to the customary meaning in the art field.

#### 2. Intrinsic Evidence

- The proper definition of a claim term is the definition a POSITA could ascertain from the intrinsic evidence.
- It is through the eyes of a POSITA that the claims are construed. Such POSITA is deemed to read the words used in the patent documents with an understanding of

- their meaning in the field, and to have knowledge of any special meaning and usage in the field.

- The intrinsic evidence is not only the claim term in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification and prosecution history.

- An inventor is free to be his or her own lexicographer, and use terms in a manner contrary to or inconsistent with one or more of their ordinary meanings. However, when acting as lexicographer, an inventor must clearly redefine a claim term so as to put one reasonably skilled in the art on notice that the inventor intended to so redefine that claim term. Any departure from the ordinary meaning of a term must be done with reasonable clarity, deliberateness, and precision.

   **3.     Extrinsic Evidence**

- Although the intrinsic evidence is most important in claim construction, extrinsic evidence may also be helpful in understanding the meaning of a claim term.

- Extrinsic evidence is all evidence external to the patent and prosecution history, including inventor testimony, dictionaries, and learned treatises.

- While extrinsic evidence can shed useful light on the relevant art, it is less significant than the intrinsic record in determining the legally operative meaning of claim language.

- Because dictionaries, and especially technical dictionaries, endeavor to collect the accepted meanings of terms used in various fields of science and technology, those resources have been properly recognized as among the many tools that can assist the

court in determining the meaning of particular terminology to those of skill in the art of the invention.

- Expert testimony can be useful to a court for a variety of purposes, such as to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field.

### 4. Means-Plus-Function

- An element (or term) in a claim can be expressed as a means or step for performing a specified function without the recital of structure, material, or acts described in the specification (*i.e.*, a means-plus-function term).

- An element with the words "means for" has a presumption that it is a means-plus-function term.

- An element does not necessarily have to have the words "means for" to be a means-plus-function term.

- However, when the words "means for" are **not** used, there is a rebuttable presumption that is it **not** a means-plus-function term.

- The test is whether the words of the element are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure.

- That is, when an element lacks the word "means," the rebuttable presumption can be overcome (*i.e.*, the element will be considered a means-plus-function term) if it is demonstrated that the claim term fails to "recite sufficiently definite structure" or

5

else recites "function without reciting sufficient structure for performing that function."

- Construing a means-plus-function claim term is a two-step process: the court must first identify the claimed function(s); then the court must determine what structure, if any, disclosed in the specification corresponds to the claimed function(s).

- Where there are multiple claimed functions, the patentee must disclose adequate corresponding structure to perform all of the claimed functions.

- Structure disclosed in the specification is the corresponding structure only if the written description of the specification or the prosecution history clearly links or associates that structure to the function recited in a means-plus-function claim limitation.

- The proper test for meeting the definiteness requirement is that the corresponding structure (or material or acts) of a means-plus-function limitation must be disclosed in the specification itself in a way that one skilled in the art will understand what structure (or material or acts) will perform the recited function.

- Even if the specification discloses corresponding structure, the disclosure must be of "adequate" corresponding structure to achieve the claimed function(s).

- If the specification does not disclose corresponding structure, material, or acts for performing the specified function, then the claim shall be found to be indefinite.

- "[A] bare statement that known techniques or methods can be used does not disclose structure" in the context of a means-plus-function limitation.

**II.     Summary of the Facts and Opinions to which Dr. Rosing is Expected to Provide Evidence**

Dr. Rosing may provide evidence regarding her opinion of how a POSITA would understand the terms of the claims in the Asserted Patents, in view of the intrinsic and extrinsic evidence. Dr. Rosing may provide evidence regarding her opinions as to the proper constructions of terms, phrases, and clauses that appear in the claims of the Asserted Patents, including but not limited to the terms, phrases and clauses specifically identified below. Dr. Rosing may also provide evidence in response or in rebuttal to any arguments or expert testimony offered by Plaintiff.

In offering her opinions, Dr. Rosing may reference information from various sources including her three decades of educational and professional experience in the fields of energy-efficient system design and utilization, and power consumption management. Dr. Rosing may reference the Asserted Patents and their file histories. Dr. Rosing may reference prior art, including prior art described in the Asserted Patents themselves, prior art considered by the Patent Office during prosecution of the Asserted Patents, and prior art identified by Defendants in their Invalidity Contentions. Dr. Rosing may reference the Parties' Joint Claim Construction and Prehearing Statement and the intrinsic and extrinsic evidence identified therein. Dr. Rosing may reference the general knowledge of a POSITA at the time of the claimed inventions. Dr. Rosing may reference claim construction briefs and any accompanying declarations filed by the Parties in this case.

### A.     "mathematically upscaling"

Dr. Rosing may provide evidence regarding her opinion that a POSITA would understand that, as recited in the claims of the '427 Patent, the term "mathematically upscaling" means **"using**

**mathematical techniques to make a displayed image larger."** Dr. Rosing may opine that the specifications of the Asserted Patents do not define "mathematically upscaling."

Dr. Rosing may provide evidence regarding mathematical upscaling techniques that were known at the time of the claimed inventions. Dr. Rosing may provide evidence regarding purposes behind using such mathematical upscaling techniques. For example, Dr. Rosing may opine that, at the time of the claimed inventions, a POSITA would have understood that mathematical upscaling techniques would have included employing an algorithm by which additional pixels were generated and incorporated into a displayed image, so that a larger version of that same image could be displayed. *See, e.g.*, Ex. B to Joint Claim Construction and Prehearing Statement (D.I. 35-2), including without limitation:

- Sept. 5, 2013 Office Action for U.S. Pat. App. No. 13/905,064, 12-13 ('427 Patent File History).
- U.S. Pat. App. Pub. No. 2010/0088634 to Tsuruta et al., Figs. 7, 44, ¶¶ [0060], [0333], [0431] (SAMSUNGDT00029069-144).
- Askar et al., Fast Adaptive Upscaling of Low Structured Images Using a Hierarchical Filling Strategy, VIPromCom-2002, 4th EURASIP, 16-19 June 2002, p. 289 (SAMSUNGDT00027549-554).
- Reddy, Enlargement of Image Based Upon Interpolation Techniques, International Journal of Advanced Research in Computer and Communication Engineering, Vol. 2, Issue 12, December 2013, p. 4632 (SAMSUNGDT00028078-087).
- Kopf et al., Depixelizing Pixel Art, ACM Transactions on Graphics, July 2011 (SAMSUNGDT00027726-734).
- Image Scaling - Wikipedia (https://en.wikipedia.org/wiki/Image_scaling).

Dr. Rosing may provide evidence regarding the application of mathematical upscaling techniques to devices such as those described in the Asserted Patents. *See, e.g.*, Ex. B to Joint Claim Construction and Prehearing Statement (D.I. 35-2), including without limitation DARELTECH_0000872; DARELTECH_0000873-937. Dr. Rosing may also opine regarding Plaintiff's proposed construction, including that the proposed construction has no relationship to a POSITA's understanding of "mathematically upscaling" and that Plaintiff's proposed construction is not supported by any evidence (intrinsic or extrinsic) that could be understood by a POSITA.

### B. "a second portion of the display screen and associated sensors, which is configured in a powered-off state and incapable of receiving user input" / "incapable of receiving user input"

Dr. Rosing may provide evidence regarding her opinion that a POSITA would understand that, as recited in the claims of the '427 Patent and the '328 Patent, the phrase "a second portion of the display screen and associated sensors, which is configured in a powered-off state and incapable of receiving user input" means **"a second portion of the display screen and associated sensors, both of which are in a state where no power is applied and not capable of detecting a touch from the user,"** and that the phrase "incapable of receiving user input" means **"not capable of detecting a touch from the user."**

Dr. Rosing may provide evidence that, during prosecution of the '427 Patent, the applicants proposed amending the independent claims to recite turning off touch detection sensors of the display screen, which are incapable of receiving user input in the second portion of the display screen, and that the claims of the '427 and '328 Patents were amended in accordance with that proposal. *See, e.g.*, Ex. B to Joint Claim Construction and Prehearing Statement (D.I. 35-2), including without limitation:

- Oct. 4, 2013 Examiner-Initiated Interview Summary for U.S. Pat. App. No. 13/905,064 ('427 Patent File History).

- Oct. 4, 2013 Notice of Allowability for U.S. Pat. App. No. 13/905,064 ('427 Patent File History) at 2-5.

- Feb. 7, 2014 Amendment for U.S. Pat. App. No. 14/058,731 ('328 Patent File History) at 2, 5, 8.

Dr. Rosing may provide evidence regarding technical aspects of display screens and touch sensors. For example, Dr. Rosing may provide evidence regarding various processes by which information may be displayed on a device, and the hardware and software involved in carrying out those processes. Dr. Rosing may also provide evidence regarding various processes by which a device detects and responds to a user's touch input, and the hardware and software involved in carrying out those processes.

Dr. Rosing may provide evidence that, at the time the Asserted Patents were filed, techniques for powering on touch sensors associated with a first portion of a display screen while powering off touch sensors associated with a second portion of a display screen were known. *See, e.g.*, Ex. B to Joint Claim Construction and Prehearing Statement (D.I. 35-2), including without limitation:

- U.S. Pat. App. Pub. No. 2013/0265243 to Law, Fig. 4, ¶¶ [0010], [0024], [0027], [0030], [0032], [0044]-[0045], [0047], [0051], [0052] (SAMSUNGDT00030046-059).

- U.S. Pat. App. Pub. No. 2013/0016046 to Chou, ¶¶ [0008]-[0010], [0013]-[0016], [0022]-[0025], [0028], [0041], [0048]-[0050], [0054] (SAMSUNGDT00029673-683).

### C. "graphical content data structure"

Dr. Rosing may provide evidence regarding her opinion that a POSITA would understand that, as recited in the claims of the '427 Patent and the '328 Patent, the term "graphical content data structure" means **"an organized collection of graphics data."** Dr. Rosing may provide evidence regarding her opinion that a POSITA would understand the term "graphical content data structure" to have a sufficiently definite meaning as the name of a structure. *See, e.g.*, Ex. B to Joint Claim Construction and Prehearing Statement (D.I. 35-2), including without limitation:

- Merriam-Webster's Collegiate Dictionary, 11th ed. (2009) (SAMSUNGDT00031313-315) (defining "data structure" as "any of various methods or formats (as an array, file, or record) for organizing data in a computer").

Dr. Rosing may provide evidence regarding her opinion that, to the extent the Court finds that the term "graphical content data structure" does not have a sufficiently definite meaning as the name of a structure, the specifications of the '427 Patent and the '328 Patent do not otherwise link or disclose corresponding structure that performs any recited functions of the claimed graphical content data structure. Dr. Rosing may provide evidence regarding the use of graphical data in computing generally. More specifically, Dr. Rosing may provide evidence regarding the use of graphical data in connection with devices configured to display graphical content, such as those described in the Asserted Patents. Dr. Rosing may provide evidence that Plaintiff's proposed construction is not supported by the specification.

### D. "unlock image"

Dr. Rosing may provide evidence regarding her opinion that a POSITA would understand that, as recited in the claims of the '612 Patent, the term "unlock image" means a **"graphical image on the display that may be used to unlock the device."** Dr. Rosing may provide evidence regarding ways in which unlock images have been used in devices such as those described in the

Asserted Patents. *See, e.g.*, Ex. B to Joint Claim Construction and Prehearing Statement (D.I. 35-2), including without limitation:

- U.S. Patent No. 8,046,721 to Chaudri et al., at 10:52-54. *See* U.S. Patent No. 7,657,849 to Chaudri et al. ("Chaudri '849"), at 10:46-48, produced at SAMSUNGDT0030536-566; *see also* Chaudri '849 at Abstract, Figs. 2, 3, 4A, 4B, 5A, 5B, 5C, 7A, 7B, 7C, 7D, 9, 10, 11A, 11B, 11C, 11E, 8:40-13:67, 15:36-16:15, 16:46-19:4 (SAMSUNGDT0030536-566).

- U.S. Pat. App. Pub. No. 2014/0120988 to Gunn et al., Figs. 4B, 4C, 5B, 5C, ¶¶ [0015], [0046], [0059] (SAMSUNGDT00030133-166).

- U.S. Pat. App. Pub. No. 2013/0080960 to McRae et al., Figs. 4, 5, ¶¶ [0015], [0017] (SAMSUNGDT00029695-706).

E. **"power management module"**

Dr. Rosing may provide evidence regarding her opinion that a POSITA would understand that, as recited in the claims of the '612 Patent, the term "power management module" means **"a module that manages power."** Dr. Rosing may provide evidence regarding her opinion that a POSITA would understand the term "power management module" to have a sufficiently definite meaning as the name of a structure.

Dr. Rosing may provide evidence regarding her opinion that, to the extent the Court finds that the term "power management module" does not have a sufficiently definite meaning as the name of a structure, the specification of the '612 Patent does not otherwise link or disclose corresponding structure that performs any of the recited functions of the claimed power management module, namely, "direct[ing] the display to display a set of a plurality of graphical indications in color in a full configuration mode that puts substantially all of the display of the

portable phone in a powered-on state" and "directing the display … to display a subset of the plurality of graphical indications, the subset comprising an unlock image comprising at least one of, time, date, or an indication of an email, text message, or voice message, and wherein the subset of the plurality of graphical indications are displayed in a portion of the display and are displayed in black, white or grayscale, instead of displayed in color."

Dr. Rosing may provide evidence regarding various processes for managing power in a mobile device, and the hardware and software involved in such processes. Dr. Rosing may provide evidence that Plaintiff's proposed construction is not supported by the specification.

Dated: October 14, 2019

*/s/ Jin-Suk Park*
Jin-Suk Park
jin.park@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Telephone: (202) 942-5000
Facsimile: (202) 942-5555

Ryan M. Nishimoto
ryan.nishimoto@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone: (213) 243-4000
Facsimile: (213) 243-4199

-and-

Roger D. Sanders
SANDERS, O'HANLON, MOTLEY & YOUNG
111 S. Travis Street
Sherman, TX 75090
Telephone: (903) 892-9133
Facsimile: (903) 892-4302

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2019, I caused a true and correct copy of this document to be served on all counsel of record for the Plaintiff via e-mail.

| | |
|---|---|
| Date: October 14, 2019 | By:    /s/ *Jin-Suk Park*<br>Jin-Suk Park |